UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

LASHAUN B.[1],                          )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )          CIVIL NO.  2:19cv38
                                        )
ANDREW M. SAUL,                         )
Commissioner of Social Security,        )
                                        )
          Defendant.                    )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), as provided for in the Social Security Act.  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for SSI must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.      The claimant has not engaged in substantial gainful activity since December 11, 2010, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3.      The claimant has the following severe impairments: obesity, bilateral carpal tunnel syndrome, degenerative disc disease of the lumbar spine, spasmodic torticollis, osteoarthritis of the knees, ankle spurs, headaches, asthma, borderline ventricular hypertrophy, bipolar disorder, post-traumatic stress disorder (PTSD), personality disorder, and depression (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except never climb ladders, ropes, or scaffolding, and she can no more than occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend, or twist.  She must avoid concentrated exposure to lung irritants, work hazards such as unprotected heights and dangerous moving machinery, noise at the traffic level or louder and sunlight.  She must be provided a sit/stand option allowing her to stand one to two minutes after sitting for 30 minutes hour [sic].   She can use her hands to handle, finger, and feel no more than frequently, and she can reach overhead and in all directions no more than frequently.  She can understand, remember, and carry out no more than simple routine tasks with no public contact and no more than occasional contact with coworkers and supervisors.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on December 19, 1972 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from December 11, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 938-53).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review.  This appeal followed.

Plaintiff  filed her opening brief on June 11, 2019.  On August 15, 2019, the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on September 17, 2019. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), on June 6, 2013, alleging an onset of December 11, 2010. (AR 55; 65; 75; 76.) On August 27, 2015, after a hearing, ALJ Janice Bruning issued an unfavorable decision. (AR 11-32.) Plaintiff requested Appeals Council review, which was denied November 16, 2016 (AR 1-6), making the ALJ's decision the Commissioner's final decision. Plaintiff then filed an action in federal district court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). On August 25, 2017, the parties agreed to remand. (AR 1021-24.) After a second hearing, ALJ Bruning issued another unfavorable decision on November 5, 2018. (AR 933-60.) Plaintiff then filed this appeal, directly to this Court, pursuant to 20 C.F.R. § 404.984, and 42 U.S.C. §§ 405(g) and 1383(c).

The evidence shows that Plaintiff reported headaches and migraines, daily to 5 per week. She had 15 migraines per month, and daily headaches. (AR 897.) They were caused by light and noise (AR 737) and could last all day (AR 866; 882). Laying down and sleep relieved them. She was diagnosed with headaches, migraines, and chronic migraines. She had a left greater occipital nerve block injection. (AR 1226.)

Plaintiff reported neck pain. She had pain in her shoulders. She also had pain in her arms with numbness and tingling. She had pain in both hands with numbness and tingling, and stiffness in both hands and fingers (AR 874; 1225). Neck pain was worse lying down, turning her head, twisting, standing, walking, and bending. (AR 1459.) Pain limited her ability to carry 15 pounds, reach overhead, perform chores, and sit 60 minutes. (AR 1493.) She had difficulty performing

overhead tasks, could not zip/unzip, could not open a bottle, and dropped things. She also had

neck spasms from spasmodic torticollis. (AR 737.) During examinations, Plaintiff had tenderness

in her cervical spine and paraspinal muscles. She had reduced range of motion in her cervical

spine, shoulders, and wrists (AR 739; 741). She had weakness in her neck, deltoids, wrists (AR

617), and hands (AR 739-40). She was unable to button, zip, and pick up coins. (AR 740.) She

consistently had pronator drift in both arms. EMG studies showed carpal tunnel in both hands.

(AR 516; 600; 624.) A cervical x-ray showed degenerative disc disease at C4-5, C5-6, and C6-7.

(AR 1475.) A cervical MRI showed: straightening of the normal cervical lordosis, possibly a

muscle strain or spasm; a hemangioma at T2; mild disc space narrowing at C6-7; and a disc

osteophyte at C6-7, resulting in mild indentation of the anterior thecal sac. (AR 1763.) Plaintiff

was diagnosed with: cervical spinal stenosis; cervical degenerative disc disease; cervicalgia (AR

560; 782); cervical radiculopathy (AR 1750); right arm pain; arm numbness; paresthesia;

disturbance of skin sensation; bilateral carpal tunnel syndrome; shoulder pain; and chronic

spasmodic torticollis. She was given braces for her hands. She attended physical therapy from

December 2015 through February 2016. She attended again in July 2017. (AR 1493.) She

received multiple injections, including in her cervical paraspinal region and right hand.

Plaintiff reported pain in her: back; hips (AR 616; 1510); legs; knees; left ankle (AR 783;

810); left foot (AR 1327); and left heel (AR 1753). Both legs were weak. She also had numbness

in both legs. Back pain was worse with activity/movement. Knee pain was worse with movement,

standing, walking, squatting, and kneeling, and relieved by rest. (AR 810; 1753.) Her left leg and

foot pain was also aggravated by movement, standing, and walking. (AR 1327.) During

examination, Plaintiff had an antalgic and/or limping gait, impaired tandem walking (AR 627;

740), could not walk on her heels and toes (AR 617), and was unable to heel to toe walk (AR 740). She had difficulty getting on and off the examination table, standing from sitting, and was unable to stoop and squat. (*Id*.) Tenderness was noted in her: lumbar paraspinal muscles; hips (AR 562; 1512); left knee (AR 812; 1755); and left ankle and foot. She had reduced motion in her lumbar spine, hips (AR 741), and knees (*Id*.). She had reduced strength in her right quadriceps, hamstring, and right foot (AR 617), and all lower major muscle groups (AR 739). Knee reflexes were absent. A patellar compression test, patellar apprehension tests and reverse patellar apprehension tests, were positive. (AR 1755.) She had a positive straight leg raise tests, bilaterally. (AR 739.)

In November 2011, imaging of her lumbar spine showed mild spondylosis. (AR 627.) An MRI showed degenerative disc disease with right paracentral disc protrusion with mild compression of the thecal sac, and mild facet joint arthropathy at L5-S1. (AR 627.) Images of her knees in 2015 and 2016 showed severe osteoarthritis of the medial compartments, virtually bone on bone, varus deformity, osteophytes, subchondral sclerosis and cysts, lateral subluxation of the tibia on both femurs, and osteophytes of the lateral femoral condyle. An x-ray of the left ankle showed a plantar calcaneal spur, and minimal anterior distal tibial spurring, suggesting a prior sprain. (AR 1341.) She was diagnosed with: gait abnormality; low back pain; iliotibial band tendonitis; greater trochanteric bursitis; chronic lumbar radiculopathy; chronic L4-5 radicular pain; thoracic or lumbosacral neuritis or radiculitis; sciatica (AR 1274; 1513); left knee osteoarthritis (AR 807; 1755); and left heel spur (AR 807). She had numerous injections in her back, hips, and knees (AR 1752; 1755). She needed knee replacements, but had to lose 50 to 80 pounds first. (AR 1741; 1752.)

Plaintiff reported chest pain, heart palpitations (AR 832; 840), an irregular and/or rapid heart rate, shortness of breath, asthma, easy fatigue (AR 824), and edema (AR 835). She had a Mallampati score of 3, diminished basal breath sounds, and expiratory rhonchi (AR 908; 914). A chest x-ray showed mild reactive airway disease. (AR 623.) On July 27, 2013, an echocardiogram (ECG) showed a non-specific T-wave abnormality. (AR 563; 829.) On January 27, 2014, another ECG showed left ventricular ejection fraction of 45 to 50%, borderline concentric left ventricular hypertrophy, a Doppler flow pattern suggesting impaired left ventricular relaxation, an atrial septum aneurysm, trace mitral and pulmonic valve regurgitation, and mild tricuspid regurgitation. A 30 day heart monitor showed sinus tachycardia of 180 beats per minute. (AR 840.) On January 29, 2015, a polysomnogram demonstrated moderate obstructive sleep disordered breathing. (AR 920.) A CPAP was recommended. (AR 920.) Plaintiff was diagnosed with: chest pain; palpitations; dyspnea; asthma; obstructive sleep apnea; abnormal EKG; and sinus tachycardia (AR 840).

Plaintiff's body mass index has been over 50 (morbid obesity). She was diagnosed obese. Plaintiff consistently reported difficulty sleeping. She had difficulty initiating sleep. She constantly moved, due to hip and leg pain. (AR 616.) She had racing thoughts at night. (AR 1728.) She also had nightmares. She felt tired and had excessive sleepiness during the day. She also reported feeling fatigued. (AR 737; 1437.) Her whole body felt tired. (AR 1657.) She was diagnosed with excessive sleepiness, insufficient sleep syndrome, and psychophysiologic insomnia.

Plaintiff reported: depression/feeling down/sad; hopelessness; worthlessness; little interest or pleasure/anhedonia; low motivation; low energy; difficulty concentrating; suicidal ideation;

cutting; urge to cut; paranoia; seeing and hearing things; hypervigilance/hyperarousal; stress; anxiety; psychomotor acceleration; euphoria; intrusive thoughts; ruminating thoughts; racing thoughts; alexithymia; isolating/withdrawing/avoiding others; anger; aggressiveness; irritability; and flashbacks of abuse. Examinations revealed: poor eye contact; slow speech with low tone; depressed, dysthymic, or dysphoric mood; sad or flat affect; helpless or hopeless attitude; decreased energy; decreased psychomotor activity; withdrawn; decreased attention; impaired remote memory; anxiety; hallucinations; concrete abstraction on metaphors; and fair to poor insight and judgment. She was diagnosed with: depression; major depressive disorder with psychotic features; rule out dysthymia; rule out bipolar disorder v. major depression; bipolar disorder (AR 1415; 1426); generalized anxiety disorder (AR 1404); PTSD; and personality disorder.

Plaintiff has been prescribed numerous medications for her various conditions, including, but not limited to, pain relieving medications for various areas of her body, including headaches and for chest pain, muscle relaxants, asthma medications, and psychotropic medications.

On January 7, 2013, Plaintiff's treating neurologist, Dr. Daksha Vyas, indicated Plaintiff suffered from neck and back pain, mild spondylosis, spasmodic torticollis, migraines, paresthesias in her right arm, carpal tunnel syndrome, and gait disturbance. (AR 324.) Plaintiff's sleep was impaired. (AR 325.) Her pain was worse with activity. (*Id*.) Dr. Vyas opined Plaintiff could walk 1 block without severe pain, stand 30 minutes at one time, and stand/walk less than 2 hours, total, in an 8-hour workday. (*Id*.) Plaintiff could sit 30 minutes at one time, and less than 2 hours total, in an 8-hour workday. (*Id*.) She needed a job which permitted her to shift positions, at will, between sitting, standing, and walking, would need breaks during the workday, and periods of

walking around. (AR 326.) She could lift/carry 10 pounds occasionally, and 20 pounds rarely. (*Id*.) She could occasionally climb stairs, but never twist, stoop, crouch/squat, or climb ladders. (AR 327.) She should avoid extreme temperatures, noise, dust, gases, fumes, and hazards. (AR 328.) She had significant limits reaching, handling, and fingering. (AR 327.) Plaintiff would be off-task more than 25% of the workday. (*Id*.) She was not capable of even low stress work. (*Id*.) She had good and bad days. (*Id*.) Dr. Vyas anticipated Plaintiff would be absent 4 or more times per month. (*Id*.)

On March 13, 2015, Dr. Vyas, again offered opinions. She indicated Plaintiff suffered from chronic lumbar radiculopathy, chronic spasmodic torticollis, bilateral carpal tunnel syndrome, and chronic migraine. (AR 850.) Chronic low back pain which radiated to Plaintiff's hip. (*Id.*) She had hand pain daily, worse with activity. (*Id*.) She had migraines 14 times per month. (*Id*.) Psychological conditions, including depression and anxiety, and stress, affected Plaintiff's condition. (*Id*.) Plaintiff could sit 1 hour at one time, and less than 2 hours, total, in an 8-hour workday. (AR 851.) She could stand 10 minutes at once, walk about half a block, and stand/walk, less than 2 hours, total, in an 8-hour workday. (*Id*.) Plaintiff could occasionally lift and carry up to 10 pounds, but never more. (AR 852.) She could occasionally climb stairs, but never twist, stoop/bend, crouch/squat, and climb ladders. (*Id*.) Plaintiff had significant limitations reaching, handling, and fingering. (*Id*.) She could use her arms to reach in front of her about 60% of the time, to reach overhead about 10% of the time, use her hands to grasp, turn, and twist objects 10% of the time, and fingers for fine manipulation about 60% of the time. (*Id*.) She should not be exposed to elevated temperatures, fumes, noise, dust, gases, or hazards. (AR 853.) Dr. Vyas opined Plaintiff would be off-task 20% of the time. (*Id*.) Plaintiff was not capable of even

low stress work. (*Id.*) Headaches and pain were increased by stress. (*Id.*) Plaintiff was likely to have both good and bad days, and expected to miss more than 4 days of work, per month. (*Id.*) She needed allowance to shift positions, at will, between sitting, standing, and walking, periods of walking, and unscheduled breaks, due to muscle weakness, pain and paresthesias, numbness, and chronic fatigue. (AR 851.) Her legs should be elevated, above heart level, 50% of seated time, due to pain and swelling. (AR 852.)

On August 17, 2013, non-examining state agency psychologist, Dr. J. Pressner, found no evidence of a medically determinable mental impairment. (AR 59; 69.) On December 18, 2013, another non-examining state agency psychologist, Dr. K. Neville, agreed. (AR 81; 92.) On September 9, 2013, non-examining state agency physician, Dr. J. Sands, opined Plaintiff suffered from severe degenerative disc disease, carpal tunnel syndrome, and obesity. (AR 59; 69.) Plaintiff could lift/carry 20 pounds occasionally, 10 frequently, stand/walk 6 hours, and sit 6 hours, in an 8-hour workday. (AR 60; 70.) She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to hazards, such as machinery and heights. (AR 61-62; 71-72.) On December 17, 2013, another non-examining state agency doctor, Dr. J. Eskonen, agreed.

In her decision, the ALJ found that Plaintiff suffered from:  severe obesity; lumbar degenerative disc disease; spasmodic torticollis; osteoarthritis of the knees; ankle spurs; carpal tunnel syndrome; headaches; asthma; borderline ventricular hypertrophy; bipolar disorder; PTSD; personality disorder, and depression. (AR 939.) Plaintiff had the residual functional capacity (RFC) for sedentary work, with a sit/stand option, to stand 1 to 2 minutes, after sitting "30 minutes hour" [sic], with various postural limits. (AR 943-44.) She should avoid concentrated

exposure to lung irritants, work hazards like unprotected heights and dangerous moving machinery, traffic level noise or louder, and sunlight. (AR 943-44.) Plaintiff could use her hands to handle, finger, and feel, no more than frequently. (AR 944.) She could understand, remember, and carry out, no more than simple, routine tasks. (*Id*.) She should have no public contact and no more than occasional contact with coworkers and supervisors. (AR 944.) The ALJ found Plaintiff could not perform her past relevant work (AR 951), but could perform other work. (AR 952-53.) Thus, the ALJ found Plaintiff not disabled. (AR 953.)

In support of remand, Plaintiff first argues that the RFC is not supported by substantial evidence. When assessing a claimant's RFC, the ALJ must point to specific evidence to explain how she reached her conclusions. SSR 96-8p93 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) ...."); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (RFC assessment cannot stand where the ALJ failed to identify medical evidence to substantiate his conclusion) It is not enough to point to evidence which might support the ALJ's conclusion. The ALJ must explain how particular evidence led her to the limitations assessed. *Moore*, 743 F.3d at 1121 (ALJ must build a logical bridge from evidence to conclusions); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (no logical bridge when evidence is recited, not analyzed) Here, the ALJ pointed to evidence the ALJ found supported the ALJ's RFC limits, but the ALJ did not explain how that evidence led to those conclusions. For example, the ALJ found that Plaintiff could handle, finger, and feel, and reach in all directions, including overhead, frequently. (AR 944.) She indicated those limits were due to carpal tunnel syndrome. (AR 948.) She found the ability to drive, use a cellular phone, and prepare simple meals, undermined Plaintiff's allegations

of difficulty holding onto, and dropping things. The ALJ opined that those activities required the use of hands and arms. (AR 949.) However, the ALJ did not explain how those activities, done on a very limited basis, undermined Plaintiff's reported difficulties or supported the ALJ's conclusion that Plaintiff could frequently use her arms and hands (*i.e.* up to 6 hours in an 8-hour workday). Plaintiff argues that the ALJ's failure to explain how the evidence led to her conclusions renders her RFC assessment not supported by substantial evidence, and warrants remand. *Briscoe ex. rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (ALJ's failure to explain how he arrived at his RFC under SSR 96-8p was "…in itself is sufficient to warrant reversal of the ALJ's decision")

The ALJ also found that Plaintiff suffered severe headaches. (AR 938.) She accommodated those by precluding concentrated exposure to traffic level noise, and avoiding concentrated exposure to sunlight. However, as Plaintiff points out, there is no logical connection between the ALJ's assessed limits. *Moore*, 743 F.3d at 1121. Although Plaintiff indicated loud noises could cause headaches (AR 254; 737), no evidence indicates traffic level noise would cause them but that lower noise levels would not. Although Plaintiff indicated sunlight can cause headaches (AR 254), she also said bright lights could cause them (AR 254; 737). The ALJ did not explain the limit from sunlight, but not bright lights generally. Additionally, Plaintiff reported stress could cause headaches, depression could exacerbate them, and they could come out of nowhere. (AR 254; 263.) The ALJ did not include limits for these, or explain this omission. Further, the ALJ indicated that although Plaintiff reported headaches, there was no objective documentation, such as urgent care treatment, to support the claimed frequency or severity. (AR 950.) However, Plaintiff reported headaches/migraines, from 3 per month, to daily. They could

13

last one to four hours, or all day. She reported headaches as much as twice per day. (AR 976.) She had to lay down in a dark room, and sleep, until they passed. The ALJ did not explain why urgent care was necessary to support a claim of frequent headaches. Plaintiff provided evidence of the frequency, duration, and limiting effects. The ALJ was required to analyze those statements and determine the weight entitled. 20 C.F.R. § 404.1529; SSR 16-3p. She was not permitted to reject Plaintiff's testimony simply due to lack of objective evidence. SSR 16-3p ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment- related symptoms alleged by the individual."); 20 C.F.R. § 404.1529 ("[W]e will not reject your statements… solely because the available objective medical evidence does not substantiate your statements."); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (ALJ may not discredit reported pain and limits solely because there is no supporting objective medical evidence).

Even if the ALJ reasonably rejected Plaintiff's reports, the ALJ was required to determine the frequency, duration, and limiting effects of migraines/headaches. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (remanded where ALJ failed to discuss how claimant's headaches affected her ability to work); *Moore*, 743 F.3d at 1124 (ALJ required to reach certain conclusion regarding the severity of claimant's migraines); *Moon v. Colvin*, 763 F.3d 718, 719 (7th Cir. 2014) (ALJ improperly analyzed headaches and failed to accommodate for them in the RFC assessment). However, in the present case the ALJ's decision includes none of those findings. The ALJ's RFC assessment is the most a claimant can sustain, full-time. SSR 96-8p. Thus, even if Plaintiff had headaches significantly less frequently than she reported, and they lasted

14

significantly for shorter periods of time, if they incapacitated her during work hours, that would have a significant impact on her ability to sustain full-time, competitive work, and the ALJ should have listed an accommodation. *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012) (RFC is not evaluated exclusively by best days, intermittent attendance normally precludes full time work); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (ALJ must consider whether one who suffers good and bad days could hold a job). In the present case, both vocational experts testified that only one absence would be permitted, per month and that no employer would permit a worker to lay down during the workday. (AR 53; 985-86.) The ALJ may not ignore that favorable testimony. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014); *Indoranto*, 374 F.3d at 474.

Plaintiff's treating neurologist, Dr. Vyas, opined Plaintiff could stand/walk less than 2 hours, and sit less than 2 hours, in an 8-hour workday, and as such, could not perform full-time work at any exertion level. (AR 325; 851.) The non-examining state agency physicians, Drs. Sands and Eskonen, opined Plaintiff could sustain light work, including standing and walking 6 hours, and sitting 6 hours, in an 8-hour workday. The ALJ gave "little weight" to Dr. Vyas' opinions, finding the evidence supported greater ability (AR 951) and gave "reduced weight" to the state agency doctors' opinions, finding later-submitted evidence supported further limits, to sedentary work (AR 950-51). The ALJ concluded Plaintiff could sustain sedentary work, which includes sitting most of the day (*see* 20 C.F.R. § 416.967(a)), with a sit/stand option, allowing her to stand for 1 to 2 minutes, after sitting 30 minutes. (AR 943.) The ALJ indicated that limit was due to degenerative disc disease, spasmodic torticollis, osteoarthritis of the knees, and ankle spurs. (AR 948.) She also indicated obesity was accounted for by limiting Plaintiff to sedentary work. (*Id.*) However, she did not explain why those diagnoses led to the conclusion Plaintiff was

more limited than the state agency doctors' found, and less limited than Dr. Vyas opined. It was not enough to summarize impairments, then give her conclusion. The ALJ had to explain what limitations those conditions imposed on Plaintiff, and explain why the evidence supported the limit to sedentary work, but no further. *Moore*, 743 F.3d at 1121; *Craft*, 539 F.3d at 677-78. Plaintiff argues that the ALJ appears to have impermissibly split the difference between the opinions offered. *Lattanzio v. Colvin*, 2017 WL 218826 *3 (N.D. Ill. 2017) (remand when ALJ failed to build the required "logical bridge" when he constructed a "middle-ground" RFC between opinions); *Bailey v. Barnhart*, 473 F.Supp.2d 842, 848 (N.D. Ill. 2006) ("serious error" in ALJ's construction of "middle ground" RFC).

Once the ALJ rejected the offered opinions, she created an evidentiary deficit and was required to point to other record evidence to support her conclusions. *Suide v. Astrue*, 371 Fed. Appx. 684, 689-90 (7th Cir. 2010) (rejection of all medical opinions caused an evidentiary deficit, and it was unclear how the ALJ arrived at RFC assessment). The ALJ was not permitted to forge ahead and make an independent evaluation, without record support. *Moon*, 763 F.3d at 722 ("…ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (ALJ may not make an independent medical determination). The ALJ's conclusion has no support in the record. Again, the ALJ's failure to point to specific evidence to support her conclusion that Plaintiff could sustain full-time sedentary work, warrants remand. *Briscoe*, 425 F.3d at 352.

Further, although the ALJ indicated she considered obesity in limiting Plaintiff to sedentary work (AR 948), there is no explanation of how. Generally indicating that she considered obesity, without providing any analysis, is contrary to the Commissioner's own Rule

regarding obesity and cases in this Circuit. SSR 02-1p100 ("we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations"); *Villano*, 556 F.3d at 562 ("[U]nder S.S.R. 02-1p the ALJ must specifically address the effect of obesity on a claimant's limitations because, for example, a person who is obese and arthritic may experience greater limitations than a person who is only arthritic."). Obesity, particularly when combined with back and leg issues, can limit the ability to sit. *Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014).

In the present case, however, in limiting Plaintiff to sedentary work due to obesity, the ALJ's decision does not demonstrate consideration of difficulties with prolonged sitting. Again, there is no evidence that standing for 1 to 2 minutes, after sitting 30 minutes, would permit Plaintiff to be able to engage in the significant sitting contemplated of sedentary work. The ALJ's failure to consider problems with prolonged sitting warrants remand. *Liggins v. Colvin*, 593 Fed. Appx. 564, 569 (7th Cir. 2015). In addition, the ALJ's limit to sedentary work, with a sit/stand option, due to obesity, does not consider the combined effect of obesity and other conditions, such as asthma and sleep apnea. SSR 02-1p (obesity can exacerbate respiratory symptom problems because it can cause the respiratory system to work harder to pump more oxygen). The ALJ did not consider the impact of obesity on cardiac impairments (tachycardia and left ventricle hypertrophy). An obese person's cardiovascular system may have to work substantially harder, even when at rest, and as such, "its ability to perform additional work is less than would otherwise be expected." SSR 02-1p. That may be particularly true where respiratory limits are also involved. SSR 02-1p. Obesity can also exacerbate depression. SSR 02-1p. The ALJ's failure to explain how obesity was factored it into her RFC assessment, or to explain the omission,

renders her RFC assessment legally insufficient and not supported by substantial evidence.
*Barrett v. Barnhart*, 355 F.3d 1065, 1068-69 (7th Cir. 2004) (remand where unclear how the ALJ considered obesity combined with other conditions); *see also, Gentle v. Barnhart*, 430 F.3d 865, 868-69 (7th Cir. 2005).

The ALJ found that Plaintiff had bipolar disorder, PTSD, depression, and personality disorder, all severe. (AR 939.) She found moderate limits in concentrating, persisting, or maintaining pace. (AR 943.) She then found Plaintiff was able to understand, remember, and carry out simple, routine tasks. (AR 944; 948.) However, the ALJ did not explain how those limitations accommodated Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. When an ALJ finds moderate difficulties maintaining concentration, persistence, or pace, those must be included in the questions posed to the vocational expert and the ALJ's RFC assessment. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-20 (7th Cir. 2010). There are no specific terms which must be used, however, terms used must capture the claimant's "temperamental deficiencies and limitations." *O'Connor-Spinner*, *supra*; *see also*, *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016) (rejecting argument that limits to simple, routine tasks and limited interactions with others, adequately accounts for temperamental deficits in concentration, persistence, or pace); *Yurt*, *supra*; *Varga*, *supra*; SSR 85-15. Here, the ALJ made no finding of Plaintiff's particular difficulties maintaining concentration, persistence, or pace, or how the limits assessed accounted for those problems. Instead of using boilerplate terms, the ALJ should have determined what conditions, or tasks, caused Plaintiff's specific difficulties and included those limits in the RFC assessment. Without the requisite analysis, it is not clear the

limits assessed accurately reflected Plaintiff's limits, undermining the reliability of the vocational expert's testimony. The ALJ's conclusion is not supported by substantial evidence if based on unreliable testimony. *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008)

Plaintiff consistently reported difficulty falling and staying asleep. She felt tired during the day. She was diagnosed with sleep apnea. She was also diagnosed with excessive sleepiness, insufficient sleep syndrome and psychophysiologic insomnia. She napped twice per day. (AR 978.) When she had a headache, she laid down and slept in a dark room. She laid down a lot during the day due to pain. (AR 244.) Some medications caused drowsiness. (AR 258.) Dr. Vyas noted impaired sleep (AR 325) and chronic fatigue (AR 851). Despite all that, the ALJ found no medical necessity for Plaintiff to lay down during the day. (AR 949.) The ALJ limited Plaintiff to no climbing ladders, ropes, scaffolds, and no concentrated exposure to work hazards like unprotected heights and dangerous moving machinery, due to tiredness. (AR 950.) However, again, the ALJ did not explain how that addressed drowsiness. Avoiding concentrated exposure to hazards, and avoiding climbing, may mitigate against accidents from drowsiness, but it does not accommodate any slowed work, lack of concentration, falling asleep, or needing to lay down during the workday. The ALJ erred by not considering Plaintiff's need to lie down, drowsiness, and need to nap during the day due to side effects of medications. SSR 96–8p; *Flores v. Massanari*, 19 Fed. Appx. 393, *5-6 (7th Cir. 2001) (remand where ALJ's decision "fail[ed] to reflect which side effects he considered, to what extent he considered them, or how..."); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (no employer likely to hire one who must lie down 2-3 times a day for an hour at a time).

In response, the Commissioner first notes that the ALJ found Plaintiff could handle,

finger, feel, and reach in all directions, including overhead, "no more than frequently", but that Plaintiff indicated the ALJ found she could do those activities "frequently." The Commissioner does not explain the relevance or difference in terminology and does not argue that Plaintiff's characterization was incorrect. He merely notes the difference in language. An RFC assessment is the most a claimant can do on an on-going and sustained basis. SSR 96-8p ("RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*.") (emphasis in original). Thus, finding that Plaintiff had the RFC to do something "no more than frequently" indicates she could do it frequently, or less. The most it could be done then, is frequently. There is no difference between Plaintiff's characterization of "frequently" and the ALJ's finding of "no more than frequently" handling, fingering, feeling, and reaching. The Commissioner argues that the ALJ discussed Plaintiff's activities which used her hands and arms and explained why the ability to perform those activities undermined Plaintiff's alleged difficulties using her hands and arms. However, although the ALJ discussed some activities, which involve handling, feeling, and fingering, and reaching, the ALJ did not explain how those activities undermined Plaintiff's alleged difficulties using her hands and arms, particularly since those activities were done on a very minimal basis. The ALJ did not explain how those activities limited Plaintiff to frequent use, rather than less, such as only occasional or rare use. Again, none of the activities the ALJ relied upon were done anywhere near six hours a day, as contemplated of frequent use.

The Commissioner argues that the ALJ considered Plaintiff's headaches, as well as obesity, throughout the decision, finding both severe, and included limitations in the RFC assessment to account for those. However, the ALJ did not explain how the evidence supported the limitations she assessed. There was evidence that all bright light exacerbated Plaintiff's

headaches, yet the ALJ did not explain why she limited only contact with sunlight. The record only indicates that noise affected Plaintiff's headaches. Plaintiff argues that there is no support for the ALJ's assessment that loud noise, at the level of traffic noise, would exacerbate headaches, but not less noise would not. The ALJ's RFC also does not explain why she did not find that depression or stress exacerbated headaches. Similarly, the ALJ did not explain why the evidence of obesity led her to limit Plaintiff to sedentary work, but no other limitations. She did not explain how she considered the combined impact of obesity with sleep apnea and asthma, cardiac impairments, and depression, and also did not appear to consider that obesity can cause problems with prolonged sitting. The ALJ's failure to explain how the evidence, as a whole, and how the evidence she relied upon, led her to the limitations she assessed, warrants remand. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (ALJ's failure to explain how she arrived at her RFC under SSR 96-8p "…in itself is sufficient to warrant reversal of the ALJ's decision.")

Plaintiff also argues that the ALJ did not consider relieving factors, such as Plaintiff needing to lay down in a dark room to sleep until headaches passed. Plaintiff also argues that the ALJ was not permitted to reject Plaintiff's reported limits, due to headaches, based on lack of objective evidence alone. Plaintiff adds that the ALJ was required to determine the frequency, duration, and limiting effects of Plaintiff's headaches/migraines, but failed to do so. Plaintiff notes that the importance of making those findings was that a limit to more than one absence a month would have left Plaintiff unemployable.

Plaintiff also argues that the ALJ rejected Plaintiff's treating doctor's opinion that Plaintiff was limited to standing and walking less than 2 hours, and sitting less than 2 hours, which amounts to less than full-time, sedentary work, and rejected the state agency opinions that

Plaintiff could sustain light work, creating an evidentiary deficit, which she impermissibly filled on her own, that Plaintiff could sustain sedentary work, without pointing to any evidence to explain how she reached that conclusion or what other evidence she relied upon. Plaintiff argues the ALJ appeared to merely split the difference between the offered opinions, which is impermissible.

In response, the Commissioner counters that the ALJ did not split the difference because under the regulations, it is generally assumed if someone can perform light work, they can also perform sedentary work. Thus the Commissioner argues that when the state agency doctors opined Plaintiff could perform light work, they also implicitly found Plaintiff could perform sedentary work. The problem with this argument is that it is contrary to the ALJ's finding. Even assuming the state agency doctors did implicitly conclude that Plaintiff could perform sedentary work, the ALJ rejected their opinions, giving them only "reduced weight." (AR 950.) The Commissioner cannot argue the ALJ's decision is supported by the state agency opinions where the ALJ expressly indicated she did not rely on those opinions but, rather, rejected their opinions in favor of later evidence. The ALJ expressly indicated that she chose to "further narrow" the RFC to sedentary work, which was more appropriate than what the state agency doctors opined. (AR 950-51.) The Commissioner is not permitted to defend the ALJ's decision using reasons the ALJ did not advance herself. *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) (collecting cases concerning *Chenery* violations indicating the Commissioner may not advance reasons to support the ALJ's decision which the ALJ did not advance themselves).

In addition, the Commissioner did not address Plaintiff's argument that the ALJ did not explain how the evidence supported the limit to sedentary work, rather than less than sedentary.

Stating that additional evidence warrants a reduction in the RFC does not explain the reasons for the degree of reduction. The Commissioner also did not address Plaintiff's argument that the ALJ did not explain what evidence she relied on to conclude Plaintiff needed a sit/stand option which allowed her to stand every 30 minutes, for 1 to 2 minutes.

The Commissioner argues that the ALJ found that because Plaintiff was able to concentrate, persist, and maintain pace, to live alone, watch a movie, learn and use Facebook, voice text, e-mail, drive, read the Bible, go out alone without getting lost, and handle her own funds, that Plaintiff had the ability to understand, remember, and carry out, no more than simple, routine tasks. However, as the Plaintiff points out, the ALJ's decision does not explain how any of those activities supported the conclusion she had only moderate limits with concentration, persistence, or maintaining pace. The ALJ's decision also fails to explain where Plaintiff's limitations lie, which cause moderate difficulties concentrating, persisting, or maintaining pace. With no discussion of what caused Plaintiff's problems maintaining concentration, persisting at a task, or maintaining pace, it is impossible to evaluate if the ALJ's limitation to simple, routine tasks, accommodated Plaintiff's specific problems concentrating, persisting or maintaining pace. The ALJ cannot merely outline activities, conclude Plaintiff has moderate difficulties in concentration, persistence, or pace, then conclude, without any explanation, that those problems were addressed by limits to simple, routine tasks. The Commissioner's contention that the activities the ALJ cited are consistent, "or at least not inconsistent", with the ability to understand, remember, and carry out no more than simple, routine tasks, does not set forth the correct standard. The ALJ was required to determine what caused Plaintiff's problems concentrating, or persisting, or maintaining pace, then include limits to address those.

Plaintiff argues there was evidence Plaintiff had difficulty sleeping at night, she had sleep apnea, and napped during the day. Medications also made her drowsy. Additionally, she had to lay down during the day to manage her headaches. Plaintiff argues that the ALJ failed to address those issues, particularly how she considered side effects from medication and the need to lay down during the day, did not explain why she only limited Plaintiff to no climbing ladders, ropes, and scaffolds, with no concentrated exposure to hazards. In response, the Commissioner argues that the ALJ considered those issues by limiting Plaintiff as she did. However, that does not address Plaintiff's argument that the ALJ did not explain why those limits were enough and no more were warranted. Further, the Commissioner argues that Plaintiff was diagnosed with "caffeine problems", was addicted or dependent on it, and was told to wean off caffeine and practice good sleep hygiene. The Commissioner argues that Plaintiff was given instructions on how to improve her sleep, which she was expected to follow. However, the ALJ merely indicated: "It is noted that [Plaintiff] has had a problem with insomnia at night and caffeine problems which could explain why she is tired in the daytime, but this was considered in the RFC to limit no ladders, ropes, scaffolds, and avoid concentrated exposure to work hazards such as unprotected heights and dangerous moving machinery." (internal citation omitted) The ALJ's decision does not indicate that the ALJ found Plaintiff non-compliant with sleep hygiene and discontinuing coffee, as the Commissioner appears to imply. The Commissioner cannot provide reasons to support the ALJ's decision which the ALJ did not rely herself. *Hanson*, 760 F.3d at 762.

Thus, for the reasons set forth above, remand is warranted, as many portions of the ALJ's RFC assessment are not supported by substantial evidence.

Next, Plaintiff argues that the ALJ's decision to give her treating physician's opinion "little weight" was not supported by substantial evidence. A treating doctor's opinions are entitled controlling weight if well supported by accepted clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527108; SSR 96-2p109; *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009). If no controlling weight is given, the ALJ must consider the regulatory factors to decide the weight warranted. *Id.*; *Scrogham*, 765 F.3d at 697 (7th Cir. 2014). Treating neurologist, Dr. Daksha Vyas, offered two opinions, each with multiple limitations, first in January 2013 (AR 324-27) then, in March 2015 (AR 850-53). The ALJ gave Dr. Vyas' opinions "little weight." (AR 951.)

The ALJ found Dr. Vyas did not specify upper extremity or hand limits, or refer to treatment notes indicating an inability to sit 2 hours a day, or stand/walk 2 hours a day. (*Id.*) That is incorrect. Although Dr. Vyas did not give specific limits reaching, handling, and fingering, in the first opinion (AR 327), in the second, she indicated Plaintiff could reach in front of her body about 60% of the time, reach overhead about 10% of the time, grasp, turn, and twist objects about 10% of the time, and use her fingers for fine manipulation about 60% of the time (AR 852). The ALJ's decision is not based on substantial evidence when based on a mistake of fact. *Pyles v. Nwaobasi*, 829 F.3d 860, 868 (7th Cir. 2016) ("But a finding of fact is clearly erroneous if it is 'based on errors of fact or logic.'") Further, the Appeals Council pointed that out in its remand, noting abnormalities in the evidence since the doctor's prior opinion, which supported the doctor's later, more restrictive findings. (see AR 1049-50.) However, the ALJ chose to ignore that, and failed to remedy the error.

The ALJ also indicated that treatment records (citing 2 notes) did not reflect Dr. Vyas'

opinion that Plaintiff had a 10% grip. (AR 951, citing 15F/84, 90) However, it is not clear what examination findings the ALJ relied upon. There is no evaluation of how long Plaintiff could use her hands. The record does have evidence indicating Plaintiff had reduced strength in her wrists and hands. (AR 617; 739-40.) Again, the ALJ relied on Plaintiff's driving, and found that it undermined Dr. Vyas' opinions regarding reduced ability to use her hands. (AR 951.) However, the ALJ cited no evidence indicating Plaintiff's ability to grip a steering wheel, or perform other brief tasks, while driving, is inconsistent with difficulty using her hands during the workday, on an ongoing basis.

Similarly, the ALJ noted that in the earlier opinion, Dr. Vyas opined Plaintiff could lift as much as 20 pounds but did not need to elevate her legs. (AR 951, see AR 326.) The ALJ implied that Dr. Vyas' opinions were inconsistent, because in the later opinion, she opined that Plaintiff could lift and carry up to 10 pounds, but never more, and Plaintiff's legs should be elevated above heart level, 50% of her seated time. (see AR 852.) However, Plaintiff's cervical and lumbar disc disease was degenerative, which means, by definition, it got worse over time. Plaintiff reported that her carpal tunnel syndrome got worse over time. Osteoarthritis of both knees was degenerative, as demonstrated by imaging over the years. (AR 816; 1755, versus AR 1752; 1760.) It follows that Dr. Vyas' restrictions would progress between 2013 and 2015. The ALJ was required to consider the progressive nature of Plaintiff's impairments. *Scrogham*, 765 F.3d at 696-97 (ALJ "failed to consider that, because of the progressive nature of the disease, there might be genuine difference between his abilities in June 2009 and his abilities in August 2010."); *see also, Roddy*, 705 F.3d at 639. Similarly Dr. Vyas may have later opined that Plaintiff needed to elevate her legs due to progressive knee osteoarthritis, or, later developed cardiac conditions, after

the first opinion.

The ALJ indicated that Dr. Vyas' treatment notes document that Plaintiff responded to injections and her migraines were improved with medication. (AR 951.) However, Plaintiff did not say her symptoms were completely resolved. Thus, improvement, without evaluation of the level of improvement, does not undermine Dr. Vyas' assessment of Plaintiff's remaining symptoms and limitations. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("They key is not whether one has improved…, but whether [she] has improved enough to meet the legal criteria of not being classified as disabled."); *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016); (responding to treatment does not mean able to work); *Scott*, 647 F.3d at 739-40 (can be a great distance between responding to treatment and ability to work).

The ALJ found that Dr. Vyas' opinions about frequency and severity of headaches appeared to be based on Plaintiff's reports, which was not reflected in the medical record. (AR 951.) As Plaintiff points out, that is incorrect. The record documents numerous headaches and migraines, of varying frequency, including: daily, three to five per week, and 15 per month (AR 897). On March 13, 2015, Dr. Vyas indicated Plaintiff had migraines about 14 times per month. (AR 850.) The most recent treatment note prior, on March 6, 2015, Plaintiff reported 15 migraines per month, and headaches daily. (AR 897.) Thus, Dr. Vyas' opinion was consistent with her most recent treatment notes. As Plaintiff's treating neurologist, she was permitted to rely on Plaintiff's reports, as headaches cannot usually be objectively verified. *Price v. Colvin*, 794 F.3d 836, 839 (7th Cir. 2015) (finding the treating doctor was reputable and based his opinions on his treatment of the claimant over 23 visits, and "[h]is professional training and experience would have taught him how to discount exaggerated statements by his patients."); *Carradine v.*

*Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (doctors would not have prescribed medication and other treatment if they thought the claimant were faking her symptoms).

The ALJ found Dr. Vyas did not explain her off-task and absence opinions. (AR 951.) Dr. Vyas noted pain and chronic fatigue. She noted both good and bad days, supporting the absence opinion. (AR 327; 853.) If the ALJ needed more information, she should have re-contacted the doctor. 20 C.F.R. § 404.1527; SSR 96-2p (may be necessary to obtain more evidence or to clarify opinions or findings which might support a treating source's opinion); SSR 96-5p (if ALJ cannot ascertain basis of opinion she must make "every reasonable effort" to re-contact for clarification); *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) ("ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable")

Since the ALJ did not point to substantial evidence inconsistent with any of Dr. Vyas' opinions, she should have given them controlling weight. 20 C.F.R. § 404.1527; SSR 96-2p. Even if Dr. Vyas' opinions were not entitled controlling weight, the ALJ must still evaluate the relevant regulatory factors, and determine the weight warranted. 20 C.F.R. § 404.1527; *Scrogham*, 765 F.3d at 697. However, the ALJ's decision demonstrates no factor analysis, rendering her decision to give Dr. Vyas' opinions "little weight," not supported by substantial evidence. *Id.*

In response, the Commissioner notes that the ALJ acknowledged Dr. Vyas' March 2015 opinion that Plaintiff had hand limitations and argues that the ALJ explained why she gave little weight to that opinion. The Commissioner did not address the argument that the ALJ incorrectly reviewed the record and her findings were based on a mistake.

Additionally, the Commissioner addressed none of Plaintiff's other arguments. He did not address Plaintiff's argument that it was not clear what examination findings the ALJ relied on to

discount Dr. Vyas' opinion that Plaintiff had only 10% hand grip because there was no evaluation of how long Plaintiff could use her hands and there was evidence of reduced strength in Plaintiff's wrists and hands. The Commissioner did not address Plaintiff's argument that the ALJ's reliance on Plaintiff's ability to grip a steering wheel to reject problems gripping was not supported by substantial evidence because using her hands to grip the steering wheel for short periods of time is not inconsistent with problems using her hands for extended periods of time or on an ongoing basis during the workday. The Commissioner did not address Plaintiff's argument that Dr. Vyas' opinions that Plaintiff was more restricted in lifting and carrying and later needed to elevate her legs were not inconsistent because Plaintiff developed new impairments and, because relevant impairments worsened over time. The Commissioner did not address Plaintiff's argument that despite any improvement with medication and injections, Plaintiff continued to suffer symptoms and improvement, alone, does not undermine Dr. Vyas' opinions about residual symptoms and limitations. The Commissioner did not address Plaintiff's argument that Dr. Vyas was permitted to rely on Plaintiff's reports about her headaches, particularly since they could not be objectively verified, and that Dr. Vyas was Plaintiff's treating doctor who was trained to analyze Plaintiff's statements, and the ALJ had no basis to discount statements or doubt Dr. Vyas' training. The Commissioner did not address Plaintiff's argument that treatment notes document symptoms which could account for Dr. Vyas' opinions about time off task and absences, and that if the ALJ needed more information to understand those restrictions, the ALJ should have re-contacted the doctor for that information. The Commissioner did not address Plaintiff's argument that since the ALJ did not point to any substantial evidence inconsistent with Dr. Vyas' opinions, the ALJ should have given those opinions controlling weight, and even if controlling

weight was not given, the ALJ should have evaluated the relevant regulatory factors to determine the weight those opinions were entitled. The Commissioner's failure to address any of Plaintiff's arguments against the ALJ's analysis of Dr. Vyas' opinions amounts to waiver of those issues. *Cincinnati Ins. Co.*, 260 F.3d at 747; *Dogan*, 751 F.Supp.2d at 1042. For the above reasons, remand is warranted.

Next, Plaintiff's argues that the ALJ's analysis of her subjective symptoms is legally insufficient. The ALJ found Plaintiff's statements regarding her symptoms and limitations were "not entirely consistent" with the evidence in the record. (AR 944.) That indicates she incorrectly believed statements could only be accepted if "entirely consistent" with the evidence. That is a legal error. Plaintiff's statements need not be "entirely consistent" with all evidence to be given weight. The ALJ must apply a preponderance of the evidence standard, not clear and convincing, or beyond a reasonable doubt, standard of review. Preponderance means the fact to be proven is more likely than not. 20 C.F.R. § 404.901; 20 C.F.R. § 404.953(a). District court decisions in the 7th Circuit have found application of a more stringent standard than that applied by the regulations, when the ALJ found claimants' statements "not entirely consistent" with other evidence. *Minger v. Berryhill*, 307 F.Supp.3d 865, 872 (N.D. Ill., 2018) (finding claimant's statements "not entirely consistent" with other evidence is a more rigorous standard than called for in 20 C.F.R. § 404.1529); *Farley v. Berryhill*, 314 F.Supp.3d 941, 946 (N.D. Ill., 2018) (ALJ applied too rigorous a standard when she stated that claimant's allegations had to be "entirely consistent" with the evidence). Notably, in *Minger*, the Court found the error was not relieved by further analysis because use of the incorrect standard rendered any discussion and analysis flawed. *Minger*, *supra* at 872; *see also*, *Dunbar v. Berryhill*, 2018 WL 4095094, *3, FN 1 (N.D.

Ill., 2018) ("…subsequent analysis cannot rescue a decision if the ALJ applies an incorrect legal standard."). Further, finding Plaintiff's statements "not entirely" consistent, the ALJ implied she found some statements consistent, without indicating which were credited. SSR 16-3p ("We will explain which of an individual's symptoms we found consistent or inconsistent...") The ALJ's failure renders meaningful judicial review impossible. *Martinez v. Astrue*, 630 F.3d 693, 694-95 (7th Cir. 2011); *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010). Any limits credited should be included in the RFC assessment, however, since it is not clear which were credited, that is impossible to review. *Murphy*, 759 F.3d at 819; *see also*, *DeJohnette v. Barnhart*, 2018 WL 521589 (N.D. Ill., 2018), noting the "not entirely consistent" language "fails to inform the Court in a reviewable way of the specific evidence the ALJ considered in reaching her conclusion." *Id.* at 5.

The ALJ indicated that Plaintiff had portrayed herself as incapacitated, unable to tend to her own needs, noting Plaintiff needed help zipping clothes, and could only prepare simple meals and make her bed. (AR 948-49.) The ALJ found no evidence Plaintiff required that level of care, noting she had not been referred to nursing care. (AR 949.) However, there is a great deal of distance between incapacitated and reliant on others for basic needs, which Plaintiff never alleged, and being limited to simple chores, simple meals, and help with fine finger activities, such as buttoning and zipping. The ALJ also relied on Plaintiff's ability to drive, use a cellular phone, shop, and prepare simple meals, to discount Plaintiff's reports of dropping things. (AR 949.) However, as discussed above, the ALJ did not explain how those activities undermined reported pain and difficulty using her hands. *Carradine,* 360 F.3d at 755; *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2000) (ALJ must explain perceived inconsistencies). The ALJ also

must be mindful of differences between daily activities, at their own pace, with help, and without being held to a minimum standard of performance, and the ability to sustain full-time, competitive work. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (minimal daily activities are not inconsistent with reported inability to sustain full-time work because, among other reasons, the individual can perform activities at their own pace, punctuated by rest, and without any minimum standard of performance); *Punzio*, 630 F.3d at 712 ("her ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace"). Plaintiff's acts of using her phone, driving short distances, infrequently, and preparing simple meals, are not comparable to using her hands up to 2/3 of the workday (*i.e.* frequently).

The ALJ added that no doctor recommended carpal tunnel release surgery, as would be expected if Plaintiff were as incapacitated as alleged. (AR 949.) However, Plaintiff's arm and hand impairments were also due to degenerative changes in her lower cervical spine with indentation on the thecal sac. (AR 1763.) Plaintiff was diagnosed with carpal tunnel syndrome with numbness/ paresthesias/or disturbed sensation, and cervicalgia/cervical radiculopathy. As such, her symptoms were more severe than if she suffered only one of those conditions. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) ("the ALJ rather than blind himself to this condition (and other relevant evidence) should have considered the weight issue with the aggregate effect of her other impairments") *see also, Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014). There is no evidence carpal tunnel surgery was a reasonable option for Plaintiff, or expected to relieve her symptoms, given her other conditions. The ALJ is not permitted to discount statements based on her own assessment of the reasonableness of treatment. *Voigt v. Colvin*, 781 F.3d 871, 877 (7th

Cir. 2015) (discounting ALJ's reliance on claimant's failure to undergo steroid injections because there was no reason to think that would have been appropriate); *see also*, *Moon*, 763 F.3d at 722; *Myles*, 582 F.3d at 677.

The ALJ found Plaintiff was not always compliant with treatment. (AR 950.) However, she did not find Plaintiff disabled, and made no finding that if compliant, she would have benefitted so significantly as to no longer be classified disabled. 20 C.F.R. § 404.1530 ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work); *Steele v. Barnhart*, 209 F.3d 936, 941 (7th Cir. 2002) (ALJ erred by failing to address the effect of noncompliance, if any, on disability); *Murphy*, 759 F.3d at 816; SSR 18-3p (the adjudicator will not deny a claim based on failure to follow prescribed treatment without finding that if prescribed treatment had been followed, it would be expected to have restored the claimant's ability to engage in substantial gainful activity) In addition, the ALJ found Plaintiff missed physical therapy sessions in 2009. (AR 950.) However, that pre-dated her alleged onset date. Further, the ALJ did not ask Plaintiff about missed sessions. Treatment notes indicate her pain was worse with activity. If physical therapy caused more pain, that explained her inclination to avoid appointments. The ALJ should have asked Plaintiff why she did not attend all physical therapy sessions before drawing a negative inference. SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints"); *see also*, *Craft*, 539 F.3d at 679; *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014). Similarly, the ALJ discounted Plaintiff's reports because Plaintiff admitted she was not always compliant with using her CPAP machine.

(AR 950.) However, the ALJ did not ask for reasons for that. SSR 16-3p; *Craft,* 539 F.3d at 679; *Beardsley*, 758 F.3d at 840. The ALJ did not ask Plaintiff about her failure to obtain particular shoes and shoe inserts. *Id.* If Plaintiff could not afford those, that was a good reason for the failure, which the ALJ should have considered. SSR 16-3p (ALJ must consider that "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services."); *see also*, *Goins*, 764 F.3d at 679-80; *Jelinek*, 662 F.3d at 814. The ALJ noted Plaintiff had been told she needed to lose weight, walk, exercise, and generally increase her activity level, but Plaintiff failed to follow those recommendations. (AR 950.) However, the Commissioner's own Rule indicates that lifestyle changes such as dieting and exercising are not "prescribed treatment" and as such, failure to follow such recommendations does not amount to failure to follow prescribed treatment. SSR 02-1p (to find failure to follow a prescribed treatment for obesity, it must be prescribed, not merely recommended and that treatment must be clearly expected to improve impairments to the point the claimant is not disabled); SSR 18-3p ("Prescribed treatment does not include lifestyle modifications, such as dieting, exercise, or smoking cessation."). Additionally, the ALJ's supposition that because exercising, increasing activity, and losing weight were recommended, her doctors thought her capable of any particular level of activity, is mere speculation. *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("…decision based on speculation is not supported by substantial evidence."); *see also*, *Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995). Once Plaintiff demonstrated conditions which could cause the limits alleged, the ALJ was required to analyze those reports by considering numerous regulatory and pain factors. 20 C.F.R. § 404.1529 and SSR 16-3p; Zurawski, 245 F.3d at 887-88.119 120 The ALJ's failure to consider those factors renders her analysis legally

34

insufficient. *Id*.

In response, the Commissioner argues that the ALJ discussed that Plaintiff was non-compliant with physical therapy, asthma medication, shoe inserts, losing weight, and exercising. He concedes that under 20 C.F.R. § 404.1530, someone who is otherwise disabled will be denied benefits if they do not follow prescribed treatment. However, the Commissioner argues that the ALJ was not relying on that regulation but, rather, that the ALJ found, generally, that Plaintiff failed to follow prescribed treatment and that the failure undermined the severity of Plaintiff's symptoms because if Plaintiff was as limited as alleged, it could be presumed that she would follow prescribed treatment to improve her condition. However, assuming, for the sake of argument, that the Commissioner is correct, he still ignores Plaintiff's arguments regarding various recommendations and compliance. Plaintiff argues that the missed physical therapy pre-dated Plaintiff's alleged onset date and her conditions have gotten worse sense then. As such, even if missed appointments spoke to the severity of her symptoms prior to her alleged onset date, that did not support the ALJ's decision to discount Plaintiff's statements after her alleged onset date. Plaintiff also argues that her pain was worse with activity, and as such, physical therapy exacerbated her pain. The ALJ was required to ask about missed physical therapy and consider the explanations provided, before discounting Plaintiff's statements about her symptoms and limitations, based on missed appointments. Plaintiff also argues that the ALJ should have asked Plaintiff about times she failed to use her CPAP machine. Plaintiff noted the ALJ should have asked about failing to buy particular shoes or inserts for her shoes, and Plaintiff notes that if she could not afford those, that was a good reason for the failure, which the ALJ should have considered. Plaintiff also argues that recommendations to change ones' lifestyle through dieting

35

and exercising is not prescribed treatment and as such, a failure to follow it does not amount to a failure to follow prescribed treatment.   Additionally, Plaintiff argues that the ALJ's assumption that such recommendations spoke to whether providers thought Plaintiff capable of more activity than Plaintiff alleged was merely speculative and not supported by any evidence in the record. The Commissioner waived all of those arguments by failing to address any of them. *Cincinnati Ins. Co.*, 260 F.3d at 747; *Dogan*, 751 F.Supp.2d at 1042.

Plaintiff argues that the ALJ used the incorrect standard, applying to harsh a standard of review when assessing Plaintiff's statements and that the ALJ did not indicate what statements she credited and to what extent, frustrating any meaningful judicial review. The Commissioner did not address that argument and waived it. *Cincinnati Ins. Co.*, 260 F.3d at 747; *Dogan*, 751 F.Supp.2d at 1042.

The Commissioner also did not address Plaintiff's argument that the ALJ's reliance on lack of nursing home care or referral to undermine Plaintiff's statements was not supported by substantial evidence. There is a great distance between being incapacitated and reliant on someone else to take care of one's most basic needs, and Plaintiff's reported difficulties such as difficulty preparing meals, dressing, and performing chores. One need not be totally incapacitated to be found disabled. The Commissioner did not address Plaintiff's argument that the ALJ failed to explain how any of the activities she relied upon to discount Plaintiff's statements, were inconsistent with Plaintiff's reported symptoms and/or limitations.   Plaintiff noted that daily activities are significantly different than the ability to sustain full-time, competitive work.   The Commissioner did not address Plaintiff's argument that the ALJ impermissibly relied on lack of carpal tunnel surgery to reject Plaintiff's reported upper extremities limits because no doctor

indicated surgery was a reasonable option, and Plaintiff suffered from other conditions affecting her upper extremities, including cervicalgia/radiculopathy, and as such, treatment of carpal tunnel may not have significantly benefitted Plaintiff. The ALJ was not permitted to discount Plaintiff's statements based on her own lay assessment of the reasonableness of Plaintiff's treatment, without support in the record. The Commissioner has waived all of those arguments by failing to address any of them. *Cincinnati Ins. Co.*, 260 F.3d at 747; *Dogan*, 751 F.Supp.2d at 1042.

Clearly, remand is warranted to resolve all the issues Plaintiff has raised herein.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

The Court DIRECTS that, in the event of another hearing, such hearing is to be held before a different ALJ. Additionally, due to the progressive nature of Plaintiff's conditions, updated medical information must be produced before any such hearing is held. Finally, the court DIRECTS that further proceedings in this case should be held as expeditiously as possible.

Entered: November 18, 2019.

s/ William C.  Lee
William C. Lee, Judge
United States District Court